Vidinski v. Holder, 13-2478. Ms. Glazer. May it please the Court, my name is Nicolette Glazer and I am representing Petitioner Mr. Kiril Vidinski. Can you keep your voice elevated? It's a little hard for me to hear. I'm sorry. Those two on the side record and the one in the center, but you're still going to have to speak up because we need a record of this. Thank you very much. That's way better. Thank you, Your Honor. This is a consolidated appeal involving two petitions for review. The first one challenges a decision by the Board of Immigration Appeal finding Mr. Vidinski removable. The second one is challenging a decision by the Board denying a timely motion to reopen, despite finding that the prior counsel committed ineffective assistance, rendered ineffective assistance during the appeal. Your Honor, we respectfully submit that two of the issues presented are disposed of based on clear and unequivocal precedent from this Court and the Board. The Board of Immigration Appeal has for decades determined that in order for the government to sustain their burden of proof under the Section 212C-I, fraud or misrepresentation, they apply an element-based approach and it requires immaterial misrepresentation. There is no dispute in this matter and the government admits that neither the IJ, the BIA, or there is any record showing that Mr. Vidinski made either a written or an oral representation of fact that was proof false and that was material. Before you get to that, can you respond a little more fully to the government's argument that Vidinski was also removable for overstaying his visa? Well, Your Honor, I believe that argument is disingenuous. Mr. Vidinski is removable on a sober stay only if the court will find that his application for adjustment of status was properly denied. I will refer the Court to the denial in which the decision-maker, the USCIS, made clear when it states, because your wife withdrew the petition, you are now out of status because the lack of adjustment of status renders you without a status. Therefore, after this decision, you can no longer remain in the United States. Now, the record shows, and that is page 190, is that that decision was never certain, Mr. Vidinski, and the attorney representing him first found that there was a denial on the day of the hearing when the judge requested that she pleads. So the question really flows into the question, what happened and why was Mr. Vidinski's adjustment of status denied? Because the regulation and the law is clear. If you have an application for adjustment of status pending, you are considering an authorized stay, meaning you are not in violation and you are not here without the permission of the government. But there's no doubt that it was withdrawn, he overstayed his visa, so how is he not removable? Well, the question, Your Honor, is as follows. If it is found that the Litersky affidavit withdrawing was either coerced or not bona fide, there is a question of how the decision would have turned out. That same denial states that at the time of the interview, and that is a different agency of the USCIS, found that there was a bona fide document presented in support of the marriage and that Ms. Litersky testified that she married Mr. Vidinski basically for love, not to assure immigration benefits. So it appears that the USCIS officer who conducted the interview was convinced that the record in front of him was bona fide. I thought that was just sort of a preliminary finding. There's enough to go forward here, but after the interview, they wanted more information. Wasn't that what happened? Well, what happened, Your Honor, is that additional evidence was presented. The language I'm citing is from the decision allowing Ms. Litersky to withdraw. And what's relevant is that we have a situation when only with Mr. Blanchett, we have the new story saying, oh, I married him for money, and then saying, well, there's somehow these photographs that were Photoshopped and my tattoo is put on another woman's arm and all this story. So we have a situation in which the USCIS appears to be puzzled by that Litersky affidavit. And then we have a different agency, the ICE agent, who's saying, I spoke to Litersky. I'm convinced that she told me the truth, so I'm going on her statements. So there is basically a big issue as to what would have happened and how the attorney would have pled if the information has come in and if she was able to actually challenge Litersky. So, yes, at the time of the hearing, when she was given the adjustment of status denial, the attorney said, okay, I will admit that because you presented me with a document saying we're terminating your status. I believe had the statutory right of Mr. Wittinsky been observed, I believe that issue would have been revisited by the attorney and it's up to the immigration judge to determine what the proper course of action would have been with respect to the NTA. Is any of this in the briefs? Well, Your Honor, we've made it clear that Mr. Wittinsky was found removable on the first charge against him solely and entirely on the admission of counsel. But what we have established is the issue of marriage fraud totally overcovers the entire proceeding, that without the marriage fraud and without being able to elicit information from Litersky and challenge her credibility, this case would have been probably completely different. The thing that I find, let me just tell you what I find most troubling about your side of this case, okay? First of all, we've got some indications that this hearsay is reliable, in that they are admissions against interest by Litersky. There is some general corroboration by the criminal case. A lot of people went to prison out of this. And then we've got the tax returns, which, as far as I know, have never been explained by Mr. Wittinsky, including actually two returns for 2005, which would have been right around, I think, the time of their interview, where suddenly there's a joint tax return for the one and only time. And then we have Mr. Wittinsky refusing to testify about any of this. All that I find very troubling. May I? Please. My time is up. May I? No, no, no. Your time is up. You still have time. Your Honor, first of all, with respect to the corroboration, I respectfully would disagree with that. First of all, none of the criminal information or the criminal case has been presented to the immigration judge. What Agent Blanchett clearly testified is that Mr. Wittinsky was never under investigation, never charged. Litersky was never charged. Dion Libich, the other informant, was never charged. There were some 17 people who were convicted. However, Agent Blanchett did not elaborate in any way. We do not know what those people actually did. So, yes, there is a guilt by association, but I think that's the only thing that we see in this case. Now, the second thing with respect to the corroboration, I believe there is impeaching information in the record plenty to show that what Ms. Litersky is saying is not really very credible. I mean, they married in 2002. If it was a marriage fraud that was supposed to last based on a conspiracy for six months, she's waiting two and a half years to file the paperwork for him. So if she was there to make a quick $1,000 and go on her merry way, why is she staying in this marriage? Well, clearly there was a situation in which there was some maybe cultural shock, maybe differences in their styles or the expectation Ms. Litersky had. I mean, there is evidence that she clearly saw that Mr. Wittinsky was a good provider. He made good living and he was able to provide a good life for her. She was not happy because he was on the road basically all the time. Now, the tax return. I mean, we do have the tax return that was presented to the immigration services. They are presented by Mr. Wittinsky. And then we have the Ms. Litersky taxes that were, I suppose, presented to Agent Blanchett. However, those taxes are also not signed. They appear to be alleging that she's single. So his tax return showed that he's single? Her tax return. She claims she's single. But his tax return showed he was single. There were, for a long time, they were saying for the 2005, there were their joint tax return disclosing family status. That one. That's correct. But I believe what it's showing is that she allegedly filed her own tax return somehow for the same year in which she claims she's single. However, the tax return that was presented to the USCIS was presented by her at the time of the USCIS interview. And at that time, she was testifying on the road that everything that she's presenting is good faith. Now, the other issue is with respect to the single status. I agree that appears to be the case. However, some people do tend to put single status because they believe there is better savings. I don't believe that is at all clear and completely satisfactory. This is not sufficient evidence that is supporting the agency conclusion that we have a misrepresentation. So the question, again, is if the BIA or the IJ wants to delve into that particular issue, they should be given that opportunity. They did not. What they found is Mr. Vidinsky did not disclose the child on the IA485. Well, I think that's kind of problematic for them because, as the court will see, the birth certificate that Agent Blanchett presented shows no father's name. It was only in 2011 that Mr. Vidinsky actually recognized the child. So unless the government can come forward with clear, convincing, and equivocal evidence to show that at the time Mr. Vidinsky signed the 485, he knew that that child was his, which, again, it is a burden on the government. We cannot simply state, oh, he is here illegal, the government believes there is something fishy here. He must have done something wrong that will amount to misrepresentation, which is basically what the government does. With my colleague's patience, can I just ask one more question? Could you go back to the fact that Mr. Vidinsky would not testify about this despite all the warnings about adverse inferences that would be drawn against him? Well, again, Your Honor, the burden for purposes of deportability is on the government. With respect to the- I understand that. With respect- But with this kind of an issue, it's hard to see why he would not testify. Well, I cannot say what the counsel was saying. I will tell you what I believe was going on. I believe the reason why she did not permit him to testify is because if he testified and the judge did not believe, I believe the government would have used that testimony as perjury to extend the conspiracy and probably would have charged them with conspiracy, misrepresentation, and marriage fraud, which they could not have been able to do based on the statute of limitations passing by. Thank you. All right. Thank you. Ms. Clark. Thank you. May it please the Court? My name is Salma Clark for the Attorney General. It is indisputable in this case that Mr. Vidinsky is subject to removal. The minute that he overstayed his nonimmigrant visa back in August of 1998, he became out of status and subject to removal, and he conceded as much, both through his counsel before the immigration judge as well as in two statements that he submitted in support of his application for relief from removal. Petitioner's counsel seems to suggest that he actually was in some sort of valid status until the moment that his 485, his application for adjustment of status, was denied. But in fact, even at that moment, even prior to the denial of that actual application, Mr. Vidinsky was in fact out of status, had overstayed his visa, and was therefore removable on that ground. And that basis for removability has never been challenged. Moreover, he is also ineligible for any relief from removal based on that removability ground because he is unable to demonstrate that he is eligible for the sole form of relief that he sought, which was cancellation of removal, on the basis that he was unable to demonstrate the requisite level of hardship, which is an issue, a determination by the agency that this court has squarely determined to be not subject to judicial review. So the only issue truly before this court today is the second ground of removability that was charged against Mr. Vidinsky, that is whether he attempted to procure some type of immigration benefit through marriage fraud. And this court has found that that question must be demonstrated by clear and convincing evidence, and when being reviewed by the court, it's subject to substantial evidence review, meaning that the agency's decision must stand unless there is evidence compelling a contrary result based on what's in the record, and that there's just not any sort of evidence in the record to compel a result that is contrary to what the agency believes. No, the question is whether the agency could reasonably rely upon, whether the judge could rely upon Blanchett's testimony about what Letersky had told him without the opportunity to cross-examine. Correct. That is one of the evidence submitted by the government in support of its charge, and in this case, Mr. Vidinsky has not been able to point to any sort of indicia of unreliability. As Your Honors noted previously, there is no question that the existence of the criminal case regarding a very large marriage fraud ring that had been subject to criminal prosecution involving, I believe, 18 individuals, all of whom were convicted, and some of which were sent to prison. Right, but that wasn't directly linked to this marriage, was it? No. Let me tell you what concerns me in this part. Okay. In effect, because the petitioner did not testify, what we've got is his original affidavit in the I-485 saying, Ms. Letersky and I had a good faith marriage with each other, and we've got her statement to Blanchett saying, no, it wasn't. Right. On the central issue. A few documents that seem inconclusive, arguably inconclusive either way. How do you rationally choose between those two points of view without hearing from the witnesses and finding clear and convincing evidence one way or the other? This Court has made clear that within administrative proceedings the hearsay testimony is not a problem. Right. Not that it's not a problem, not that the rules of evidence, they don't apply in full detail. Correct, Your Honor. But basic elements of fairness and reliability apply. Correct. The question to ask is whether it would be fundamentally fair to allow that hearsay testimony to be taken into account. To be decisive here, correct?  I'm sorry, Your Honor. The evidence, Blanchett's testimony about what Letersky had told him was the decisive evidence here, right? It was probably the primary evidence, but not the sole evidence, Your Honor. I'll take that as decisive, okay? Because in addition, and with respect to that agent's testimony, and he did testify at the hearing and subject to cross-examination by Petitioner's Counsel. He was, sure. That's not the point, right? Well, Your Honor, he's not the one that spoke the words, so that's the issue. And as I understand it, the Petitioner here had requested by subpoena some of the people who actually made the statement to the agent, right? That's correct. And the government didn't do anything to enforce that or to ensure that they would be present so that he'd have an opportunity to cross-examine. I mean, that's what it really boils down to. Those statements made to the agent carried the day, because clearly the judge didn't buy what the Petitioner was trying to sell. Yes, that's true, Your Honor. I mean, that's just putting it very bluntly. But the question is whether, when the evidence is so decisive, that the Petitioner should have the ability to cross-examine the people who are actually accusing him of this conduct, when the government has the power to get those people in or to enforce the subpoenas. So those are two different questions that have two different answers. With respect to the first point is that there was, in cases in this court where the court has taken issue with the witness not being present who presented the hearsay testimony in question, there has always been some form of unreliability to which the government, that has created the problem as to why that particular statement should not, the hearsay statement should not have been relied upon. How about an unhappy ex-spouse, right? I mean, this is just an explosive kind of situation, right? That's correct, Your Honor, but this court has also had a case where the charge was made, the false marriage charge was made by a very angry and embittered ex-son-in-law, and the court didn't find that to be problematic in being able to... Which case was that? It's an unpublished decision, Your Honor. It's Pauline Coney versus Holder, which is 2012 Westlaw 5462595, and that was a 2012 decision, unpublished. But it did involve the issue of marriage fraud, I believe. My apologies, Your Honor. I think I'm getting the facts of these various cases mixed up. We do that too sometimes. Surgunov, which is a published decision in this case. Surgunov? Yes, and it's cited in Respondent's Brief. It involved a case where the original marriage fraud information was brought to the DHS' attention by a very angry son-in-law, an ex-son-in-law, but that did not, the court nevertheless found that his statements, the way that his hearsay statements were treated by the immigration court were sufficient. With respect to the question regarding... The guy were authorized by the judge, weren't they? That's correct. Subpoenas were served on these two individuals by the immigration judge, but as Petitioner's Counsel concedes in the opening brief, the agency does not have any effective enforcement mechanism behind that subpoena, meaning it can be issued, but there's no way for the immigration judge to force any particular witness to actually show up in court if they decline to do so. But in addition to the testimony of the investigative officer here, there is also significant documentary evidence that points to the evidence of marriage fraud. Well, there's the fatherhood of the child during what was purported to be the marriage to Lutersky, that is the child with another woman who was previously... His ex-girlfriend. Correct. And in the application for the adjustment of status that was filed with DHS, there are corrections that are made within that document to update the information contained therein, and while that application was filed post-birth of this U.S. citizen child, there's no indication of that child's presence inside that application, and that seems to suggest that perhaps he was acting to hide the fact of this particular relationship with his previous girlfriend. There are also, as Your Honors noted, tax returns filed by Mr. Bedinsky for every year he's been present in the United States, every single one of which indicate that he was single. At no point did he ever indicate that he was married or had dependents. And with respect to the tax returns, there are two tax returns in the record filed from his previous U.S. citizen ex-spouse, but those don't indicate that she was single. They only indicate that she was the head of household and listed her son, whom she had had prior to her marriage, with a different man prior to her marriage to Mr. Bedinsky. And the 2005 tax report, two of which there are two copies, both of which were filed by Mr. Bedinsky, one indicates him to be single and the other indicates him to be married to the U.S. citizen. And again, as Your Honors have noted, that that particular tax return, the year where there were two tax returns filed, was in fact the same year that he and his former spouse had come to DHS to be interviewed for his adjustment application. I see that my time is up, if there are no other questions. Thank you. We would just request that the Court uphold. There is one other thing that I'd like to ask. I believe that there are something like 800,000 extant removal orders at this point in this country? There may be, Your Honor. That are awaiting execution. If we are to decide this case on the merits, if we deny and dismiss the petition, as you suggest, is there any reason to think that that would actually be carried out? I think the fact that Mr. Bedinsky is from Bulgaria, meaning it's not a country with whom we have issues obtaining travel documents, and the fact that this is a case that involves a significant charge of fraud, would make this an enforcement priority for DHS. So maybe, maybe not? I couldn't guarantee and answer one way or the other, but this case is a much better candidate and likely to be subject to removal than something that does not involve fraud. All right, thank you. Thank you, Your Honor. One minute, Ms. Glazer. Yes, Your Honor. If I may, I just want to correct a statement made by my esteemed colleague. Actually, Section 235, D, 4A, and B disprove what she said. An immigration officer can obtain a subpoena. An alien is not mentioned in that regulation. An immigration officer can go to any district court and ask for an enforcement of the subpoena and the help of a district court to hold the person who did not show up in contempt. The immigration judge cannot do that, and an alien cannot do that. In this case, the subpoena was issued. Petitioner served the subpoena to Ms. Letersky. Agent Blachett told her, you don't need to come up. As a result, nobody showed up, so Mr. Bedinsky never had an opportunity to actually confront his opponent. That the agent told her she didn't have to show up, is that in the record? That's correct, Your Honor, and that is the statement from counsel is, I know I have cited it in my brief. It is, I believe, 207, in which she specifically advised the judge. It's not evidence, but is it reliable hearsay? That's correct. The judge said, well, it's a bad assertion, I cannot take your word for it. So I'm just curious, how often is it that the subpoena is referred to a district judge to enforce it? I mean, just in your experience. I'm just curious. I have never seen one. Most of the time, I believe the immigration judge will not issue the subpoena, so we never can go actually and serve it. Thank you. We'll take the case under advisement. That concludes the call for the day, and we're in recess.